NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HDI GLOBAL INSURANCE CO. a/s/o PAUL MILLER GT, INC., <br><br> Plaintiff, <br><br> v. <br><br> NATIONWIDE AUTO CARRIER, LLC, <br><br> Defendant. | Civil Action No. 23-01236 (GC) (RLS) <br><br> **MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff HDI Global Insurance Company's[1] Motion for Default Judgment (ECF No. 9) against Defendant Nationwide Auto Carrier, LLC, pursuant to Federal Rule of Civil Procedure ("Rule") 55(b). Defendant was served on April 24, 2023 and has not filed opposition papers or otherwise appeared in this case. (ECF No. 6.) The Court has reviewed Plaintiff's submissions and decides the motion without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Plaintiff's Motion is **DENIED**.

**I.   BACKGROUND**

   **A.   Factual Background**

Plaintiff is an insurance company that issued an insurance policy to Paul Miller GT, Inc. effective for the period of January 1, 2022 to January 1, 2023. (ECF No. 1 ¶¶ 1, 16.) Paul Miller runs a car dealership located in Parsippany, New Jersey. (*Id.* ¶ 7.) On or about March 16, 2022,

---

[1]   Plaintiff sues as the subrogee of its insured Paul Miller GT, Inc. (ECF No. 1 ¶ 7.)

Paul Miller purchased a 2021 Bentley Flying Spur automobile from Auto Warehouse LLC, located in Florida, for a sum of $283,545.00. (*Id.* ¶ 8; ECF No. 9-7 at 3.)[2] Paul Miller hired a New Jersey towing company for $1,000.00 to arrange transportation of the vehicle from Florida to Paul Miller's car dealership in New Jersey. (ECF No. 1 ¶¶ 9-10; ECF No. 9-9 at 2.) To ship the vehicle, the towing company engaged Defendant, "an automobile transportation company engaged in the business of transporting automobiles in interstate commerce." (*Id.* ¶¶ 2, 11.)

Defendant transported the vehicle from Florida to Paul Miller's car dealership in New Jersey, arriving at the dealership on or about April 1, 2022 after the dealership had closed for business. (*Id.* ¶ 12.) When delivering the vehicle after-hours, Defendant's "driver and/or agent" failed to "1) secure the Vehicle upon exit; 2) lock the Vehicle;" and "3) deposit the Vehicle's keys in the dealership's after-hours key drop box, as instructed." (*Id.* ¶ 13.) As a result, the vehicle was stolen from the dealership lot on or about April 2, and Paul Miller never recovered the vehicle. (*Id.* ¶¶ 14-15.) Paul Miller filed an insurance claim with Plaintiff, which reimbursed Paul Miller for the loss of the vehicle less the applicable deductible for a total of $279,000.000. (*Id.* ¶ 17; ECF No. 9-6 at 2.) Paul Miller subrogated his claims arising from the loss to Plaintiff. (ECF No. 1 ¶ 17; ECF No. 9-6 at 2.)

### B. Procedural History

On March 3, 2023, Plaintiff filed its complaint against Defendant. (ECF No. 1.) On April 24, Plaintiff served Defendant. (ECF No. 6.) On June 22, the Clerk of Court entered default against Defendant. (ECF entry dated Jun. 22, 2023.) Shortly after, Plaintiff moved for default judgment. (ECF No. 9.) To date, Defendant has not responded or otherwise appeared in this

---

[2] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

action.

## II. LEGAL STANDARD

Under Rule 55(a), a plaintiff may request that the clerk of court enter default as to "a party against whom a judgment for affirmative relief is sought [who] has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Once a default has been entered, the plaintiff may then seek the entry of a default judgment — either by the clerk or the court itself — under Rule 55(b). Fed. R. Civ. P. 55(b).

A party is not entitled to a default judgment as of right; "the entry of such a judgment is left primarily to the discretion of the district court." *DirecTV, Inc. v. Asher*, Civ. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)). Because default judgments prevent the resolution of claims on their merits, the court "does not favor entry of defaults and default judgments." *United States v. Thompson*, Civ. No. 16-0857, 2017 WL 3634096, at *1 (D.N.J. July 20, 2017) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Following an entry of default, "[a] defendant is deemed to have admitted the factual allegations of the Complaint . . . except those factual allegations related to the amount of damages." *DirecTV*, 2006 WL 680533, at *1 (citation omitted). Still, "[t]he Court need not accept the moving party's legal conclusions, because [e]ven after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* (citation and internal quotation marks omitted).

In entering default judgment, a court must determine whether (1) it has personal and subject matter jurisdiction, (2) the defendant was properly served, (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proven damages. *Days Inns Worldwide, Inc. v. T.J. LLC*,

3

Civ. No. 16-8193, 2017 WL 935443, at *2 (D.N.J. Mar. 9, 2017) (citing *Days Inns Worldwide, Inc. v. Jinisha Inc.*, Civ. No. 14-6794, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015)). In addition, the court must evaluate three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)); *see also Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (same). If these factors weigh in favor of the moving party, the court may grant default judgment.

### III. DISCUSSION

#### A. Subject-Matter and Personal Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *Werremeyer v. Shinewide Shoes, Ltd.*, Civ. No. 19-10228, 2023 WL 6318068, at *2 (D.N.J. Sept. 28, 2023) (citations omitted).

The Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 & 1337. "The district courts shall have original jurisdiction . . . of an action brought under section . . . 14706 of title 49, [commonly referred to as the "Carmack Amendment,"] only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interests and costs." 28 U.S.C. § 1337(a). A civil action under the Carmack Amendment "may be brought against a delivering carrier in a district court of the United States," or "against the carrier alleged to have caused the loss or damage, in the judicial district in which such loss or damage is alleged to have occurred." 49 U.S.C. §§ 14706(d)(1)-(2). The term "carrier" includes a "motor carrier," or "a person providing motor vehicle transportation for compensation." 49 U.S.C. §§ 13102(3), (14).

Here, Defendant is "an automobile transportation company engaged in the business of transporting automobiles in interstate commerce," and is alleged to have transported the vehicle at issue in interstate commerce. (ECF No. 1 ¶¶ 2, 12.) Plaintiff alleges that Defendant was the delivering carrier that caused the loss of the vehicle when Defendant attempted to deliver the vehicle in New Jersey. (Id. ¶ 13-15.) The matter in controversy is $287,045.00, which exceeds the $10,000 statutory threshold. (*Id.* ¶ 37.) Thus, the Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 & 1337.[3]

The Court also has personal jurisdiction over Defendant. "[T]he place of incorporation and principal place of business" are bases for general personal jurisdiction over a corporation. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). "Courts have applied the *Daimler* rules to limited liability companies with 'equal force.'" *Griggs v. Swift Transp. Co.*, Civ. No. 17-13480, 2018 WL 3966304, at *2 (D.N.J. Aug. 17, 2018) (quoting *Finn v. Great Plains Lending, LLC*, Civ. No. 15-4658, 2016 WL 705242, at *3 n.3 (E.D. Pa. Feb. 23, 2016)). Thus, "for the purposes of general personal jurisdiction, a limited liability company's citizenship is that of its principal place of business and state of [formation]." *Tri-Union Seafoods, LLC v. Ecuatorianita*, Civ. No. 20-9537, 2021 WL 1541054, at *3 (Apr. 20, 2021) (quoting *Rodriquez Rivera v. Loto Grp., LLC*, Civ. No. 20-4062, 2020 WL 7384720, at *1 (D.N.J. Dec. 16, 2020)).

Here, Plaintiff alleges that Defendant is a New Jersey limited liability company based in

---

[3] The case also satisfies the complete-diversity and amount-in-controversy requirements for the Court to have subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiff is an Illinois corporation with an office and place of business in Illinois. (ECF No. 1 ¶ 1.) Defendant is a limited liability company whose members reside in Florida and New Jersey, according to a New Jersey Department of Treasury status report submitted by Plaintiff. (ECF No. 9-2 at 3.) *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) ("[T]he citizenship of an LLC is determined by the citizenship of its members."). And Plaintiff demands $287,045.000, which exceeds the $75,000 statutory threshold. (ECF No. 1 ¶ 37.) Thus, the Court also has subject-matter jurisdiction under 28 U.S.C. § 1332.

New Jersey.  (ECF No. 1 ¶ 2; ECF No. 9-2.)  Plaintiff also submits a New Jersey Department of Treasury status report showing that New Jersey is Defendant's "home jurisdiction," and has an agent for service of process with a business address in Perth Amboy, New Jersey.  (ECF No. 9-1 ¶¶ 3(d)-(e); ECF No. 9-2 at 2-3.)  Therefore, the Court has personal jurisdiction over the Defendant.

### B. Service of Process

As a limited liability company, Defendant could be properly served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." *See Tri-Union Seafoods*, 2021 WL 1541054, at *4 (quoting Fed. R. Civ. P. 4(h)(1)(B)).  Plaintiff served a copy of the summons and complaint upon Defendant through Kenneth A. Olsen, Esq., at Interstate Authority, LLC, which is a process agent for Defendant listed on the U.S. Department of Transportation, Federal Motor Carrier Safety Administration's website.  (ECF No. 9-4 at 2-5; ECF No. 9-1 ¶ 3(g).)  Accordingly, Defendant was properly served.

### C. Sufficiency of Complaint

"A consequence of the entry of default judgment is that the factual allegations of the complaint . . . will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citations omitted).  Here, Plaintiff alleges that Defendant transported the vehicle at issue "in interstate commerce from Florida to New Jersey." (ECF No. 1 ¶ 7.)  Defendant arrived at the car dealership after it had already closed for business.  (*Id.* ¶ 12.)  Defendant then "improperly delivered" the vehicle by leaving it at the closed dealership, neglecting to secure the vehicle, and failing to deposit the vehicle's keys "in the dealership's after-hours key drop box, as instructed." (*Id.* ¶¶ 7, 13.)

The type of injury alleged by Plaintiff is governed by the statutory scheme commonly

referred to as the Carmack Amendment, 49 U.S.C. § 14706, *et seq.*, which establishes a uniform federal standard governing "liability for loss, damage, or injury to goods while in interstate transit." *See AMG Res. Corp. v. Wooster Motor Ways, Inc.*, 796 F. App'x 96, 98 (3d Cir. 2020) (citations omitted); *see also Certain Underwriters at Int. at Lloyds of London v. UPS of Am., Inc.*, 762 F.3d 332, 334-37 (3d Cir. 2014) (providing a brief overview of the Carmack Amendment). Although Plaintiff does not expressly assert the Carmack Amendment as a basis for relief, Plaintiff cites the Carmack Amendment as a basis for subject-matter jurisdiction. (ECF No. 1 ¶ 4; ECF No. 9-1 ¶ 3(c).) *See also Aspen Am. Ins. Co. v. Total Quality Logistics, LLC*, Civ. No. 17-5281, 2019 WL 1275058, at *3 n.4 (D.N.J. Mar. 20, 2019) (applying the Carmack Amendment where plaintiff, although asserting only state-law claims, alleged loss of goods in interstate transit and cited the Carmack Amendment as a basis for jurisdiction). The type of loss that Plaintiff alleges — the theft of a vehicle transported in interstate commerce — falls within the Carmack Amendment's purview. *See Certain Underwriters*, 762 F.3d at 333, 336-37 (applying the Carmack Amendment where plaintiff asserted only state law claims, because the Carmack Amendment "completely occupie[s] the field of interstate shipping").[4] Accordingly, the Carmack Amendment applies in this case.

---

[4] The Carmack Amendment applies here despite the vehicle's having been "improperly delivered" to the car dealership, because the delivery was incomplete. (ECF No. 1. ¶ 7.) The loss occurred when Defendant dropped off the vehicle after-hours and failed to secure it. (*Id.* ¶¶ 7, 12-13.) By failing to deposit the vehicle's keys in the after-hours drop box "as instructed" (*id.* ¶ 13), Defendant failed to complete "part of the agreed transportation" — specifically, the agreed-upon method of delivery. *See Certain Underwriters*, 762 F.3d at 335 (quoting *Ga., Fla. & Ala. Ry. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916)). Courts have applied the Carmack Amendment in similar circumstances of incomplete delivery. *See, e.g.*, *Merchants Terminal Corp. v. L & O Transp., Inc.*, Civ. No. 09-2065, 2012 WL 1416631, at *10-11 (D. Md. Apr. 20, 2012) (holding the carrier liable under the Carmack Amendment where the carrier dropped off goods after-hours and the goods were stolen before the shipper had "accepted possession, custody, and control" of the goods).

Because the Carmack Amendment "completely occupie[s] the field of interstate shipping," the law carries an "exceedingly broad" preemptive force — "broad enough to embrace 'all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation.'" *Certain Underwriters*, 762 F.3d at 335 (quoting *Blish Milling Co.*, 241 U.S. at 196). Therefore, if the Carmack Amendment applies, it "preempts all state or common law remedies available to a shipper against a carrier for loss or damage to interstate shipments," regardless of whether such remedies contradict or supplement Carmack relief. *Id.* at 335-37 (quoting *N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 456 (7th Cir. 1996)) (holding that the Carmack Amendment preempted plaintiff's common law claims of breach of contract, negligence, and conversion).

Here, Plaintiff asserts only three counts of state-law negligence, breach of contract, and conversion. (*Id.* ¶¶ 21-37.) These state-law claims are preempted by the Carmack Amendment and thus cannot stand. *Certain Underwriters*, 762 F.3d at 336-37 (noting that preemption of state-law claims of breach of contract, negligence, and conversion "is the only result that is consistent with the Amendment's goal of uniformity and its 'broad, preemptive terms'" (citing *Underwriters at Lloyds of London v. N. Am. Van Lines*, 890 F.2d 1112, 1116 (10th Cir. 1989))).

Plaintiff's failure to assert an express claim under the Carmack Amendment is not fatal, however, if "the Complaint pleads facts which, taken as true, establish Defendant's liability for breach of its duties as a motor carrier under the Carmack Amendment." *See Aspen*, 2019 WL 1275058, at *3-4 (finding that plaintiff pled facts sufficient to establish a Carmack Amendment claim where plaintiff cited the Carmack Amendment as a basis for jurisdiction but asserted only state-law claims for breach of contract, negligence, and breach of bailment claims). To establish a *prima facie* claim under the Carmack Amendment, Plaintiff must allege "(1) delivery of the

8

goods to the initial carrier in good condition, (2) damage to the goods before delivery to final destination, and (3) the amount of the damages." *Mrs. Ressler's Food Prod. v. KZY Logistics LLC*, 675 F. App'x 136, 140 (3d Cir. 2017).

Plaintiff covers some of its bases in the complaint. Plaintiff alleges that Paul Miller purchased the vehicle for $283,545.00. (ECF No. 1 ¶ 8.) Plaintiff reimbursed Paul Miller for the full price of the vehicle minus the applicable deductible. (*Id.* ¶ 17). And Plaintiff claims that as a result of the theft, Paul Miller suffered damages in the amount of $287,045.00, which includes the full purchase price of the vehicle, the $1,000.00 freight charge, and the insurance deductible. (*Id.* ¶ 26.) But missing from the pleadings is any allegation as to the first element: that the vehicle was in good condition upon Defendant's receipt of the vehicle in Florida. Without this first element, Plaintiff has not pled a *prima facie* claim.

To be sure, a bill of lading representing that the carrier received the goods "in apparent good order" can establish this first element if the goods were visible and open to inspection, as the subject vehicle was here. *See Blue Bird Food Products Co. v. Baltimore & O.R. Co.*, 474 F.2d 102, 104 (3d Cir. 1973) (citing *Tushman v. Pa. R.R.*, 230 F.2d 787 (3d Cir. 1956)). But no such document is before the Court. The bill of sale between Paul Miller and the vehicle's seller, showing the total price of the vehicle, does not establish the condition of the vehicle upon delivery to Defendant. (*See* ECF No. 9-7.) The invoice from the towing company is similarly silent on the vehicle's condition. (ECF No. 9-9.)

Plaintiff has alleged that after the vehicle was stolen, it reimbursed Paul Miller for the vehicle's full value less the deductible. (ECF No. 1 ¶ 17; ECF No. 9-8 at 2.) But Plaintiff's allegation that it reimbursed its insured for the full value of the vehicle is not equivalent to alleging that Defendant received the vehicle in good condition in Florida. Plaintiff must plead the vehicle's

9

actual condition upon delivery to Defendant, and has not done so here. *See, e.g., Aspen*, 2019 WL 1275058, at *3-4 (granting default judgment under the Carmack Amendment even though Plaintiff did not expressly assert a Carmack Amendment claim, because "Plaintiff plead[] that . . . the Cargo was delivered in good condition"); *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, Civ. No. 15-5343, 2017 WL 11491955, at *2 (D.N.J. Nov. 28, 2017) (granting default judgment for a Carmack Amendment claim where plaintiff alleged that defendant "received, and accepted the Cargo, then in good order and condition"); *RLS Distribution, Inc. v. Small*, Civ. No. 16-3714, 2016 WL 6634873, at *2 (D.N.J. Nov. 8, 2016) (granting a motion for default judgment for Carmack Amendment claims where plaintiff pled that defendant received the product in "good order and condition").

In short, the Court finds that Plaintiff has not sufficiently pled a cause of action against Defendant and that default judgment is therefore inappropriate. *Days Inns Worldwide*, 2017 WL 935443, at *2.

## IV. CONCLUSION

For the reasons set forth above, and other good cause shown, Plaintiff's Motion for Default Judgment is **DENIED WITHOUT PREJUDICE**. Plaintiff shall have thirty (30) days in which it may supplement its Motion for Default Judgment to the extent Plaintiff can cure the deficiencies identified herein. An appropriate Order follows.

Dated: January 17, 2024

*Georgette Castner*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE